785 F.2d 310
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DALE A. SUTTON, Plaintiff-Appellant,
v.
ANN C. ROWLAND, Assistant U. S. Attorney, et al.
 84-3785
 United States Court of Appeals, Sixth Circuit.
 1/7/86
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: MERRITT and WELLFORD, Circuit Judges; and, CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 The district court granted partial summary judgment for defendants Rowland, Caldwell, Petro, and Moore, and later dismissed all claims against all defendants in this civil rights action.
 
 
 2
 Plaintiff, Dale Sutton, was convicted in January 1981 for the armed robbery of a Cleveland postal station. Subsequently, however, the criminal action against Sutton was dismissed and this resulted in his release from prison after more than two years of incarceration. Sutton then sued for damages eight defendants contending each should be responsible for his conviction which was later set aside under unusual circumstances.
 
 
 3
 Defendants in this action include the United States; Ann C. Rowland, the Assistant United States Attorney assigned to investigate and prosecute the criminal case against Sutton; J. William Petro, United States Attorney for the Northern District of Ohio; Paul M. Hartman and Donald L. Caldwell, the United States Postal Inspectors assigned to the investigation of the armed robbery of the postal station; William G. Moore, Postal Inspector in charge of the Cleveland Division of the United States Postal Inspection Service; and John M. Preston, an expert witness at Sutton's trial who testified about his expertise in training tracking dogs and who together with his dog, defendant Harass II, participated in the investigation of the postal robbery prior to Sutton's trial. Preston rendered an opinion concerning whether the investigation indicated that Sutton may have been at the scene of the crime. Sutton alleges that the defendants conspired to deprive him of his constitutional rights by presenting false evidence at Sutton's trial and by delaying Sutton's post-conviction proceedings. Count II added a claim for libel against defendant Rowland.
 
 
 4
 On August 5, 1980, plaintiff Sutton was arrested and charged with armed robbery of the Cranwood Branch of the Cleveland Office of the United States Post Office, but ten days later the charge was dropped. On September 15, 1980, plaintiff was again indicted for the same armed robbery.
 
 
 5
 On January 5, 1981, the criminal trial against Sutton on the charges commenced in the district court. At trial, the government offered evidence that two armed men robbed four postal employees of registered mail at the loading dock of the Cranwood Postal Station in Cleveland, Ohio, during the prior July. At the trial Vivian Wise, a postal worker, identified Sutton as the person who robbed her. Witness Wise further testified that she had picked Sutton from a photo array on August 1, 1980, as looking like the robber and again identified Sutton out of a line-up on August 21, 1980, as having participated in the robbery.
 
 
 6
 Expert witness John M. Preston also testified for the government at Sutton's trial. Preston offered testimony both as to his expertise in training and using 'scenting' dogs and as to Harass II's training and qualifications as a 'scenting' dog. Sutton alleges, and the government does not now contest, that during the course of Sutton's trial Preston testified untruthfully as to his credentials, background, and training, and as to the abilities and ancestry of his German shepherd, Harass II.
 
 
 7
 Preston used the dog to assist in the investigation of the Cranwood robbery. Preston offered testimony that on August 2, 1980, eleven days after the alleged robbery, Harass II was scented to a sheet upon which Sutton had purportedly slept. Preston testified that, when commended to search, Harass II picked up the same scent that was on the sheet in the parking lot and woods at the scene of the crime. Preston further testified that when presented with a line-up of postal trailers and scented to the same sheet, Harass II picked out the scent from the sheet in the postal trailer involved in the robbery. The jury then returned a verdict of guilty against Sutton and he was subsequently sentenced to imprisonment in Terre Haute Federal Correctional Institution. Sutton then appealed his conviction to this court.
 
 
 8
 In July 1982, Rowland, the Assistant United States Attorney assigned to Sutton's criminal case, conversed with another Assistant United States Attorney concerning Julius Manning's involvement in the postal robbery for which Sutton was convicted. This attorney, assigned to prosecute two other postal robberies involving Manning, informed Rowland that Manning was interested in a favorable plea bargain and a reduction in bond in exchange for providing information regarding other crimes. As part of the information regarding other postal crimes in exchange for a plea bargain, Manning indicated that Sutton was not involved in the Cranwood robbery.
 
 
 9
 Rowland contacted the postal inspectors handling the Manning case and asked them to investigate Manning's statements and to keep her apprised about the investigation. Shortly thereafter, Postal Inspectors Caldwell and Long interviewed Manning. In the interview, Manning identified the persons participating with him in the Cranwood robbery, and those identified did not include Sutton. A subsequent interview was taken of John E. Harris, Jr., another alleged participant in the robbery, later in July of 1982. In August, Rowland received a report from the Postal Inspection Service with attached memoranda of the interviews of Manning and Harris. Upon receipt of the report, Rowland requested that postal inspectors interview the people named by Manning in his statement to determine whether Manning and Sutton had any connection or relationship to each other.
 
 
 10
 On August 27, 1982, Rowland notified Sutton's attorney of the Manning and Harris statements and sent copies of the memoranda of the interviews to him. Rowland also submitted copies of the letter to the attorney and the memoranda to the District Judge who had tried and sentenced Sutton.
 
 
 11
 On October 12, 1982, Rowland received an inquiry from Sutton's attorney as to the status of the investigation. Rowland informed them that the investigation was not complete and suggested that they join in a motion for a new trial. On the same day, Rowland contracted William Moore, Postal Inspector in charge, Cleveland, Ohio, and requested a written report on the status of the investigation. A few days later, Rowland received the requested progress report which indicated that those implicated in Manning's statement had not yet been located. It further indicated that no investigation had been made concerning a previous connection between Manning and Sutton. The report stated that on October 13, 1982, an array of photographs had once again been shown Vivian Wise, which included those individuals implicated in Manning's statement. Wise did not recognize any of them, one of whom, according to Manning, was the one who had personal contact with Wise during the course of the robbery. Wise had testified at trial that Sutton had been the individual who had such contact and had pulled her out of her car. The report further stated that Manning had admittedly lied to the postal inspectors about an individual's involvement in an unrelated robbery under investigation by the postal inspectors. Rowland promptly requested additional investigation from the supervisor of the Postal Inspection Service.
 
 
 12
 On October 15, 1982, Stanley Tolliver, Sutton's attorney, filed a motion for a new trial on the basis of the newly discovered evidence. On October 21, 1982, Rowland submitted to Tolliver additional memoranda of interviews of Manning and Harris and a copy of the Manning plea agreement. Rowland also informed Tolliver that she had inquired about the court appointing an investigator for the defense to make further inquiries in Sutton's interest, but that Tolliver would have to make the request if he were interested.
 
 
 13
 The next day Rowland filed the government's response opposing the motion for a new trial in order to preserve the right to a hearing on Manning's credibility. Because the postal investigation was not complete, the government had not yet determined its final position concerning a new trial.
 
 
 14
 Very soon thereafter, Rowland requested a meeting with the trial judge and the matter was set for a conference on November 24, 1982, before a magistrate. At that time Rowland submitted unsolicited, additional memoranda of interviews to Sutton's attorney. Rowland also expressed a desire to have a hearing on the motion for new trial as soon as possible.
 
 
 15
 The hearing was set on December 20, 1982. In a conference between United States Attorney Petro, Rowland, and another Assistant United States Attorney, the government decided to concede on the motion for a new trial, but further decided to go ahead with a scheduled polygraph of Manning before determining whether to take steps to dismiss the indictment against Sutton. Manning, however, refused a polygraph. On December 20, 1982, Manning's attorney indicated to Rowland that Manning wanted to meet with her, and a meeting was arranged for January 13, 1983, the earliest date that Manning's attorney and Rowland were both available.
 
 
 16
 Sutton's criminal case meanwhile was pending on appeal thus depriving the district court of jurisdiction to rule on Sutton's motion for a new trial. A joint motion to have the appeal of Sutton's criminal case remanded to the district court was then made. Sometime in December 1982, Rowland requested a letter from the trial judge be sent to the Sixth Circuit indicating that he was inclined to grant the motion for a new trial.
 
 
 17
 At the meeting between Manning, his attorney, and Rowland, Manning was given immunity from prosecution for the Cranwood robbery. Rowland then interviewed Manning at length. Manning's description of the facts of the Cranwood robbery were fairly accurate but differed from that of the victims in several respects. Manning agreed to submit to a polygraph examination, and preliminary results showed Manning had been truthful in exculpating Sutton from the Cranwood robbery.
 
 
 18
 On February 3, 1983, Rowland contacted this court to discover why a remand had not issued, only to learn that no letter had been received from the trial judge. Following a meeting, the judge sent the requested letter and on February 28, 1983, we remanded the case to the district court. On March 3, 1983, the district court finally issued its order vacating Sutton's sentence. Also on March 3, 1983, the government consented to an order dismissing the indictment against Sutton.
 
 
 19
 Rowland immediately contacted the Probation Department requesting that Sutton be released, but was informed that he could not be released because of a pending parole violator detainer which involved disobedience of the rules of his custody. On March 4, 1982, Rowland provided a letter to the Probation Department summarizing the events leading up to the dismissal of the indictment against Sutton as requested by the Probation Department. Sutton was then released from prison. A few days after appellant Sutton's release, Rowland made statements to the Cleveland 'Plain Dealer' to the effect that she was still not sure that appellant was innocent of participating in the Cranwood robbery. This statement was the basis of the libel count.
 
 
 20
 The district court found that Rowland, Caldwell, and Hartman did not conspire to present false evidence at Sutton's trial; did not induce John Preston to commit perjury; did not conceal exculpatory evidence about Harass II; and had no knowledge that any evidence offered at trial was false. Summary judgment was granted accordingly to these defendants on the conspiracy count. The court further found that Petro, the United States Attorney, did not hold office during Sutton's investigation and trial, and that Postal Inspector Moore was not assigned to the Cleveland Office until after Sutton's trial. Accordingly, summary judgment was also granted in favor of these defendants as to the conspiracy claims. The claim against Harass II, Preston's dog, was dismissed by the court as invalid and frivolous. Defendant John Preston was found to be in default of answer. The court further found that Rowland's statement to the press concerning the status of Sutton's prosecution following his release from prison was not libelous and in any event did not constitute a constitutional claim. Sutton's libel claim was dismissed for lack of subject matter jurisdiction.
 
 
 21
 In response to the defendants' supplemental motion for summary judgment, on September 7, 1984, the district court granted summary judgment in favor of defendants Rowland, Petro, Caldwell, and Moore, finding that plaintiff's constitutional rights were not violated during the post-conviction proceedings. The court further concluded that Preston was entitled to absolute immunity from suit despite allegedly presenting false testimony at Sutton's trial, and therefore dismissed plaintiff's complaint against him.
 
 
 22
 Because there has been no showing that would mitigate against the immunity of the prosecutors with respect to bringing Sutton to trial and eventually bringing about his release, and because Petro has no part in the prosecution himself, the district court was correct in dismissing the count one conspiracy claim against Petro. Because Moore was also not involved in the investigation or prosecution of Sutton, the grant of judgment was also appropriate as to him. We affirm the dismissal of the claims against the United States because of a lack of subject matter jurisdiction under the Federal Tort Claims Act. See Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 514-15 (6th Cir. 1974). The action against the dog, Harass II, does not lie and we affirm this dismissal.
 
 
 23
 We find also that the district court fully considered the matters submitted and properly granted summary judgment in this case to Rowland, Caldwell, and Hartman on the claims relating to Sutton's prosecution and trial. We affirm essentially for the reasons stated by Judge Krenzler in this regard. This leaves for further consideration the claim that Rowland (and/or other defendants) delayed in bringing about his release after learning about Manning's exculpatory information. In reviewing the facts relating to this issue, we are satisfied that the government, and particularly the prosecutor, acted without violation of Sutton's constitutional rights. Once it was learned that Sutton might not be guilty, despite eyewitness testimony and other evidence to the contrary, Rowland and the Postal Service acted responsibly and without unreasonable delay in bringing pertinent information to Sutton's attorney and in pursuing an investigation. As a matter of law, based on essentially uncontroverted facts, we affirm the summary judgment for all the individual defendants with respect to the charge of unconstitutional delay.
 
 
 24
 We next consider the allegation of libel against Rowland. We, again, adopt the rationale of the district court in its treatment of this claim:
 
 
 25
 Under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), an action will lie against federal officials only for infringement of a federal right. Absent this infringement this Court lacks subject matter jurisdiction to hear this action.
 
 
 26
 The entire context of the alleged prosecutorial statements as they appeared in the 'Cleveland Plain Dealer' were offered by plaintiff as evidence in Exhibit 1, attached to plaintiff's response to defendant's motion for summary judgment. The pertinent portion of the statement appeared in the 'Plain Dealer' as follows:
 
 
 27
 Sutton's lawyer, Stanley E. Tolliver [stated] . . . 'As a practicing lawyer for 30 years, I have never been one to try to defend this legal system . . .. If you don't have money, you don't get justice.'
 
 
 28
 But Asst. U. S. Atty. Ann C. Rowland, who prosecuted Sutton, was hesitant to draw such a parallel, because she is not sure of Sutton's innocence, she said. 'On assessing the new evidence, we felt we could not prove the case again. We felt it was only fair to release him as soon as possible,' she said.
 
 
 29
 As viewed in its entirety, the Court concludes that defendant Rowland's alleged extra-prosecutorial statement constitutes nothing more than her comment on the current status of Sutton's case and as such does not deprive Sutton of any constitutionally protected right. Furthermore, the Supreme Court has held that injury to reputation alone with resulting impairment of future employment opportunities is not actionable as a violation of a constitutional right. Paul v. Davis, 424 U.S. 693 (1976).
 
 
 30
 Since the alleged prosecutorial statements, even if made, do not deprive Sutton of a constitutionally protected right, this Court lacks subject matter jurisdiction to hear the Fifth Court of plaintiff's amended complaint.
 
 
 31
 Thus, we affirm the judgments of the district court as to all defendants save Preston, who neither appeared nor made a defense in this case.
 
 
 32
 Sutton concedes in his brief filed in this cause that 'witnesses, whether governmental or private parties, are absolutely immune from liability in civil suits filed as a result of perjured testimony. Briscoe v. LaHue, 460 U.S. 325 (1983).' Sutton accordingly has no claim against Preston as a private witness.
 
 
 33
 It is equally clear that Sec. 1983 does not authorize a damages claim against private witnesses on the one hand, or against judges or prosecutors in the performance of their respective duties on the other.
 
 460 U.S. at 335. The court added that
 
 34
 [t]he principles set forth in Pierson v. Rav, [386 U.S. 547 (1967),] to protect judges and in Imbler v. Pachtman, [424 U.S. 409 (1976),] to protect prosecutors also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just--or possibly unjust--conclusion is equally indispensable.
 
 
 35
 Id. at 345.
 
 
 36
 Sutton also argues that he seeks recompense from Preston for his improper role in the investigation prior to trial. His complaint, however, specifically charges:
 
 
 37
 Defendant, William Preston, conspired, agreed and did carry out a scheme to deprive plaintiff of his constitutional right to due process by committing perjury . . ..
 
 
 38
 (Emphasis added). While Sutton filed his complaint pro se, he clearly sought damages by reason of Preston's alleged 'perjury,' not by reason of his being a vague expert witness, nor by reason of an inept investigation. While we are not disposed strictly to construe a pro se complaint, it seems clear that Sutton's claim filed in 1981 was foreclosed by the Supreme Court decision in Briscoe.
 
 
 39
 We accordingly AFFIRM the judgment of the district court as to all defendants.